IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| CHARLES JONES, | ) | CASE NO.3:19-CV-01102 |
|---|---|---|
| Plaintiff, | ) ) ) ) | MAGISTRATE JUDGE |
| v. | ) ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | | |

## **Introduction**

Before me[1] is an action by Charles Jones under 42 U.S.C. §§ 403(g) and 1383(c) seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Jones' applications for Disability Insurance Benefits and Supplemental Security Income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Under terms of my procedural orders,[5] the parties have briefed their

---

[1] ECF No. 12. The parties consented to my exercise of jurisdiction and the matter was then transferred to me by United States District Judge James G. Carr.
[2] ECF No.1.
[3] ECF No. 8.
[4] ECF No. 9.
[5] ECF Nos. 5, 11.

1

positions,[6] filed fact sheets,[7] met and conferred as to clarification or resolution of issues[8] and participated in a telephonic oral argument.[9]

For the following reasons, the decision of the Commissioner will be affirmed.

## Facts

Jones, who was born in 1965, has a GED[10] and previously worked in multiple semi-skilled jobs at medium, light and sedentary levels, as well as an unskilled job at medium exertional level.[11] He testified at the hearing that he had been homeless for three years and stays in a tent or garage on property owned by his sister.[12]

As to his physical condition, he further testified that his doctor advised him not to drive because of a heart condition and because his medications affect his vision and memory/ability to think.[13] He also stated that he has been advised not to lift more than ten pounds[14] and that he is losing feeling in his hands and feet.[15] Moreover, he stated that he

---

[6] ECF Nos. 15 (Jones), 18 (Commissioner).
[7] ECF Nos. 14 (Jones), 18, Attachment (Commissioner).
[8] ECF No. 19.
[9] ECF No. 21.
[10] Tr. at 45.
[11] *Id*. at 49.
[12] *Id*. at 43-44.
[13] *Id*. at 48, 51, 61.
[14] *Id*. at 53, 58, 68-69.
[15] *Id*.

2

has carpal tunnel syndrome affecting his right, dominant hand and that he wears a brace.[16] He had his right thumb amputated more than 20 years ago due to a work injury.[17]

The ALJ found that Jones has the following severe impairments: coronary artery disease; degenerative disc disease of the cervical spine at C4-C7; hypertension; chronic obstructive pulmonary disease (COPD); carpal tunnel syndrome, status post-surgery; and emphysema.[18] The ALJ concluded that none of these severe impairments met or medically equaled a listed impairment.[19]

The ALJ then determined that Jones has an RFC to perform sedentary work, with some restrictions as to climbing and avoiding temperature extremes, hazards and fumes, odors and dust.[20] However, the RFC specifically notes that Jones "can frequently handle and finger."[21]

The ALJ evaluated the treatment notes and concluded that Jones' "cardiovascular, respiratory and musculoskeletal conditions prevent him from performing the standing, walking and lifting of more than sedentary work," necessitate the inclusion of the other

---

[16] *Id*. at 58-59.
[17] *Id*. at 22.
[18] *Id*.
[19] *Id*. at 23-24. In so doing, the ALJ noted that there is no specific listing for carpal tunnel syndrome and so analysis here was done in connection with listings for major dysfunction of joints and neurological disorders.
[20] *Id*. at 24.
[21] *Id*.

limitations of the RFC.[22] The ALJ also stated that, due to the carpal tunnel syndrome, Jones "cannot handle or finger more than frequently …."[23]

As to the medical opinion evidence, this matter was considered under the new regulations at 20 C.F.R. § 404.1520c, which applies to applications filed after March 27, 2017. The ALJ paraphrased a portion of that new regulation by stating that, as to medical opinion, "we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources."[24]

To that point, instead of the former analytical path setting out a rebuttable presumption of weight accorded to treating sources, the new regulation, as was recently summarized in *Gower v. Saul*,[25] provides that "administrative law judges will now evaluate the 'persuasiveness' of medical opinions by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation."[26] Of these five factors, "the two most important are supportability and consistency."[27]

Further, the new regulation sets forth how the administrative law judges are to explain how they considered the supportability and consistency factors in determining the

---

[22] *Id.* at 27.
[23] *Id.*
[24] *Id.* Paraphrasing 20 C.F.R. § 404.1520c(a).
[25] 2020 WL 1151069 (WD Ky. March 9, 2020).
[26] *Id.* at *4 (citing 20 C.F.R. §§ 404.1520c(a) and (b)).
[27] *Id.* (citing 20 C.F.R. §§ 404.1520c(a) and (b)).

4

"persuasiveness" of a source's opinion.[28] Notably, in that regard, administrative law judges "may, but are not required to, explain how" they considered the three other factors beyond the two most important in determining the persuasiveness of an opinion.[29] In addition, administrative law judges now "must consider" the medical opinions of non-examining state agency medical or psychological consultants.[30]

As noted, the ALJ here, although he did not explicitly cite to the new regulation, made clear that this matter was evaluated under the new rubric.

To that point, the ALJ reviewed a 2017 functional opinion from Dr. R.P. Kakarla, M.D., who was identified as "the claimant's cardiologist," and a subsequent 2018 functional report from the same source.[31]

As concerns these opinions, the ALJ found that they were "persuasive as to claimant's inability to perform more than sedentary exertion," and thus included the additional limitations of the RFC.[32] However, the ALJ found that recent clinical findings related to exams in January and July of 2018 did not support the "stricter limitations" of Dr. Karkala's opinions, such as concern absenteeism.[33] The ALJ also noted that the 2017 opinion was "inconsistent" regarding reaching handling or fingering – stating in one place

---

[28] *Id*. (citing 20 C.F.R. § 404.1520c(b)(2)).
[29] *Id*. (citing 20 C.F.R. § 404.1520c(b)(2)).
[30] *Id*. (citing 20 C.F.R. § 404.1520a(b)(1)).
[31] Tr. at 27.
[32] *Id*.
[33] *Id*. at 27-28.

that there were "no significant problems" in these areas but in another giving limitations.[34] The ALJ further observed that the 2018 opinion removed the "inconsistent limitations on reaching, performing fine manipulation, grasping, turning and twisting."[35]

In addition, the ALJ considered the opinions of state agency consultants who found that Jones could perform light work with some postural limitations.[36] The ALJ found these to be "somewhat persuasive."[37] The ALJ also considered Jones' testimony, which he found to "contain significant inconsistencies with the record," citing, *inter alia*, such things as Jones rolling and smoking both cigarettes and marijuana – "contradicting his allegation of problems using his hands" and inconsistent with "his cardiac and respiratory issues."[38]

Finally, the VE testified that, with the RFC as set forth, Jones was capable of performing his past relevant work as a night clerk in a hotel.[39] Thus, Jones was found not disabled.[40]

## **Analysis**

The Commissioner's decision here is evaluated under the long-standing substantial evidence standard, with particular attention to the new regulation, discussed above, concerning the evaluation of medical opinions and the articulation of persuasiveness.

---

[34] *Id*. at 27.
[35] *Id.*
[36] *Id*. at 28.
[37] *Id.*
[38] *Id*. at 28-29.
[39] *Id*. at 29.
[40] *Id*.

The central issues here are whether the ALJ erred in finding that Jones can frequently handle and finger, and if it was error to "reject" the opinion of Dr. Kakarla that Jones would be absent at least two days per month.[41]

Handling and fingering

First, as to the handling and fingering, as the Commissioner argues,[42] and as is recounted above, Dr. Kakarla's 2017 opinion offered contradictory statements on that subject, and his 2018 opinion, as well as the opinions of the state agency consultants, imposed no limitations on handling and fingering. Jones, in turn, argues that multiple physicians in 2018 examined Jones for carpal tunnel syndrome and found limitations.[43] He also contends that while there is "some evidence" to support the ALJ's assessment of his hand limitations, he maintains that the evidence of an abnormal EMG and cervical MRI, a prescription for wrist braces and a medical recommendation for cervical surgery support his claim that he cannot finger or feel except on occasion.[44]

The ALJ here did examine what he termed "very inconsistent" information as to Jones' treatment for carpal tunnel syndrome.[45] In that review, the ALJ did specifically note the evidence Jones now cites – "positive Tinel signs consistent with bilateral carpal tunnel syndrome," a February 2018 upper extremities "electrodiagnostic test" consistent with

---

[41] ECF No. 15 at 1.
[42] ECF No. 18 at 1.
[43] ECF No. 15 at 14-15.
[44] *Id*. at 15.
[45] Tr. at 26.

7

bilateral carpal tunnel syndrome and bilateral cervical radiculopathies, and a cervical MRI that showed multiple issues.[46] The ALJ further discussed a March 2018 evaluation by a neurosurgeon that found decreased sensation in the upper extremities.[47] The ALJ also noted an April 2018 follow-up meeting with the neurologist where Jones reported neck and shoulder pain, but the clinical findings were "generally normal."[48]

I note first in this regard that none of the medical sources here offered functional opinions. Thus, there was no opinion to evaluate for persuasiveness under the new regulation. Next, it seems that the ALJ did not fail to review and assess any relevant clinical evidence. Moreover, as also noted above, the ALJ did find that Jones' complaints about his own limitations in this area were inconsistent with his own activities. Finally, as also noted, the ALJ did rely on absence of limitations in the final opinions of Dr. Kakarla and the state agency consultants. While it is true that these opinions are prior to the 2018 clinical exams, the ALJ concluded that the 2018 clinical evidence was consistent with the RFC.[49]

In sum, I find no error in the ALJ's determination of the RFC as to handling and fingering.

Dr. Kakarla

As the Commissioner observes, the ALJ specifically found that Jones' "clinical findings upon his most recent echocardiogram and stress tests do not support … the degree

---

[46] *Id.*
[47] *Id.* at 26-27.
[48] *Id.* at 27.
[49] *Id.*

of absenteeism Dr. Kakarla described."[50] Further, the ALJ concluded that there was an inconsistency between Dr. Kakarla's opinion that Jones would be absent two days per month and Dr. Kakarla's opinion that Jones' symptoms only occasionally interfered with attention and concentration.[51]

Thus, as to the new regulatory standard of weighing a medical source opinion as to its support from the evidence and consistency with the evidence, I find that the ALJ met that standard. I also find that in this regard the ALJ did not make a medical judgment unsupported by the record.[52] The ALJ here did no more than evaluate a medical opinion to see if it is persuasive, based on the two principle criteria set out in the regulation, as is set forth above.

## **Conclusion**

For the reason stated, I find that the decision of the Commissioner is supported by substantial evidence and that the decision is in accord with the new regulation for evaluating medical source opinions.

IT IS SO ORDERED.

Dated: April 8, 2020                                                 s/William H. Baughman Jr.
                                                                                                 United States Magistrate Judge

---

[50] *Id*. at 27-28.
[51] *Id*. at 28.
[52] See, ECF No. 15 at 18.